1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6

7   MOLLIE ROBINSON,                    )
                                       )
8                        Plaintiff,    )      Case No. 2:13-cv-02305-GMN-PAL
                                       )
9   vs.                                )      **REPORT OF FINDINGS**
                                       )      **AND RECOMMENDATION**
10  AUTOMA, S.p.A.,                    )      (Mot Quash - Dkt. #4)
                                       )
11                       Defendant.    )
    _____)
12

13         This matter is before the court on Defendant Automa, S,p.A.'s Motion to Quash (Dkt. #4),

14  which the district judge referred to the undersigned for a report of findings and recommendation.  The

15  court conducted a hearing on March 20, 2014.  Cal Potter and C.J. Potter appeared on behalf of the

16  Plaintiffs, and Nathan Reinmiller appeared on behalf of the Defendant.  The court has reviewed the

17  Motion, Plaintiffs' Response (Dkt. #11), Defendant's Reply (Dkt. #14), and considered the arguments

18  of counsel at the hearing.

19                                   **BACKGROUND**

20  **A.     Nature of the Case.**

21         This is a wrongful death action brought by the estate, wife and two minor children of Benji

22  Carrion, deceased.  Mr. Carrion was an employee of Priority Plastics, a Las Vegas plastic bottle

23  manufacturing company.  His duties included operating a plastic blow mold injection machine which

24  Plaintiffs allege was manufactured, sold, or distributed by Defendant Automa, S.p.A.  Mr. Carrion's

25  head was crushed by the machine on July 1, 2010, while attempting to remove purged plastic from it.

26  **B.     Procedural History of the Case.**

27         The complaint was initially filed in state court June 27, 2012.  An amended complaint was filed

28  on October 2, 2012, and a second amended complaint was filed March 26, 2013.  This case was

removed (Dkt. #1) December 18, 2013, by Automa which was not served with the complaint until November 28, 2013.  Plaintiffs have asserted claims for: (1) strict products liability; (2) negligence; (3) breach of express and implied warranties; (4) oppression and malice, express or implied; and alter ego liability.  Prior to removal, the assigned state judge granted three ex parte applications to extend time to serve the Defendant, and service was eventually effected 519 days after the complaint was filed.

### C.     The Motion to Quash.

In the current motion, Automa seeks to quash service on personal jurisdiction and timeliness grounds.  Automa argues that Nevada may not constitutionally exercise personal jurisdiction over it because it lacks both specific personal jurisdiction, and general personal jurisdiction over it.  The Plaintiffs have the burden of establishing specific jurisdiction, and cannot establish Defendant either purposefully directed activities toward Nevada, or purposefully availed itself of the Nevada forum. Automa argues that the Plaintiffs' claims do not arise out of or relate to Automa's forum related activities and that Nevada's exercise of personal jurisdiction is unreasonable and would violate the Due Process Clause of the Fourteenth Amendment.  Specific personal jurisdiction does not exist because the Plaintiffs' claims do not arise out of Automa's conduct in Nevada, and the machine's presence in Nevada is insufficient to confer specific jurisdiction.  Automa also contends general personal jurisdiction does not exist because Plaintiffs cannot establish that its contacts with Nevada are so "continuous and systemic" to render Automa "essentially at home in the forum state."  Automa is an Italian corporation, does not avail itself of the privileges and benefits of Nevada, does not directly solicit business in Nevada, and does not regularly sell its products in Nevada or to entities that serve the Nevada market.

Automa also argues that service of process is deficient because Plaintiffs took 519 days to serve summons and complaint.  Because the case was filed in state court, Nevada Rule of Civil Procedure 4(i) required service within 120 days of the date the complaint was filed on June 27, 2012.  Nevada Rule of Civil Procedure 4(i) requires dismissal of any Defendant not served within 120 days after the filing of the complaint, "unless the party on whose behalf such service was required files a motion to enlarge the time for service and shows good cause why such service was not made within that period."  Plaintiffs filed three ex parte applications to enlarge the time for service which were granted by the state district

1  judge.  However, Defendant argues that the applications did not establish, and the state judge did not

2  find, good cause for enlarging the time for service.

3      **D.    Plaintiffs' Response.**

4      Plaintiffs oppose the motion arguing Automa has purposefully availed itself of the Nevada

5  forum and has sufficient minimum contacts with Nevada that exercising personal jurisdiction over it

6  does not offend traditional notions of fair play and substantial justice.  Plaintiffs contend that Automa

7  has personally availed itself of the privilege of conducting activities in Nevada, and has thus invoked

8  the benefits and protections of Nevada state laws.  It has therefore submitted to personal jurisdiction.

9  Citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011),  Plaintiffs acknowledge that

10  the Supreme Court has held that a manufacturer's mere act of placing a product into the stream of

11  commerce is insufficient, and that a manufacturer's contacts must be purposefully directed at the forum

12  state to establish personal jurisdiction against it.  However, Plaintiffs argue that in products liability

13  cases like this one, it is the Defendant's actions, not its expectations, that empower a state to exercise

14  personal jurisdiction over the Defendant.

15      Plaintiffs contend that Automa repeatedly sent agents and technicians into Nevada and

16  "otherwise availed itself of the forum."  Specifically, Automa provided maintenance tables, machine

17  instructions, and maintenance manuals to Priority Plastics' Las Vegas, Nevada Plant Manager, Mike

18  Fitzgerald, on December 29, 2008.  Plaintiffs support this argument with the December 29, 2008 email

19  attached as Exhibit "1" to its opposition and argue that the email demonstrates it was foreseeable to

20  Automa that its products would be in Nevada, that it had actual knowledge of the machine's presence in

21  Nevada, and purposefully directed specific acts toward the forum state.

22      Plaintiffs also argue that Automa purposefully availed itself of the benefits of the Nevada forum

23  by sending correspondence to Priority Plastics' Las Vegas plant manager and superintendent concerning

24  a presentation at Priority Plastics on October 27, 2009.  This email is attached as Exhibit "2" to

25  Plaintiffs' opposition.  Later the same month, Automa sent correspondence soliciting business to

26  Priority Plastics headquarters in Portland, Indiana.  A copy of this correspondence is attached as Exhibit

27  "3" to Plaintiffs' opposition.  The emails, it is argued, demonstrate Automa had actual knowledge of

28  Priority Plastics' Las Vegas facility, and therefore, the letter to the Portland, Indiana headquarters

1  constitutes a direct solicitation to all of Priority Plastics' facilities to provide "parts, training,

2  maintenance, and consulting services" to customers in North America.

3      Plaintiffs also rely on post-incident contacts with the State of Nevada to support their personal

4  jurisdiction arguments.  Representatives of Automa inspected the machine in Las Vegas, Nevada on

5  December 14 and 15, 2010.  Additionally, the reports of expert witnesses, Dr. Koppenaal and Stephen

6  P. Andrew, demonstrate that Automa technicians were physically present in Nevada to inspect and

7  operate the Automa machinery which killed Mr. Carrion after the accident on November 26, 2012,

8  November 27, 2012, September 3, 2013, September 4, 2013, November 4, 2013, and November 5,

9  2013.  The expert reports that refer to these visits are attached as Exhibits "5" and "6" to the opposition.

10     Plaintiffs maintain that the emails, correspondence and physical presence of Automa

11 representatives in Las Vegas, Nevada on at least eight separate days after the accident manifest an intent

12 by Automa to submit to personal jurisdiction in Nevada.

13     **E.      Defendant's Reply.**

14     Automa's reply reiterates arguments that Plaintiffs have failed to meet their burden of

15 establishing Automa had sufficient minimum contacts with Nevada which arise from, or relate to, its

16 manufacture and sale of the allegedly defective machine involved in this case.  Automa has not

17 personally directed activities in the state of Nevada or engaged in a transaction which availed itself of

18 the privilege of conducting activities in Nevada, and has not invoked the benefits and protections of

19 Nevada's laws.  The claim itself does not arise out of any of Automa's forum-related activities, and the

20 exercise of personal jurisdiction over the Italian corporation would be unreasonable.  Plaintiffs'

21 opposition relies on five contacts with Nevada to support its personal jurisdiction arguments.  Automa

22 contends that two pre-accident emails and one letter do not establish that Automa personally availed

23 itself of the Nevada forum.  Automa also maintains that its post-accident inspection and investigation in

24 Las Vegas cannot create personal jurisdiction, and that only its pre-litigation conduct is relevant in

25 analyzing whether personal jurisdiction exists.

26                          **DISCUSSION**

27 **I.     Personal Jurisdiction.**

28     This is a civil action between Nevada Plaintiffs and an Italian corporation arising out of the

                                    4

1   wrongful death of Plaintiffs' decedent.  It was removed (Dkt. #1) by the Defendant on diversity of

2   citizenship grounds, and the parties do not dispute that the amount in controversy exceeds the court's

3   $75,000 jurisdictional limit, or that the court has subject matter jurisdiction over this case.  However,

4   this court's jurisdiction to resolve a case on its merits requires a showing that the court has both subject

5   matter and personal jurisdiction before the court's decision will bind the parties.  *Ruhrgas AG v.*

6   *Marathon Oil Co.,* 526 U.S. 574, 577 (1999).

7        This court has jurisdiction over Automa only if Nevada would have jurisdiction.  Fed. R. Civ. P.

8   4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a

9   defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the

10  district is located."); *Huffy Corp. v. Overlord Indus.*, 246 F. Supp. 2d 1093, 1096 (D. Nev. 2003).

11  Automa's motion to quash asserts the court lacks personal jurisdictional over it, and that service of

12  process was not timely effected.  As this case is before the court on diversity jurisdiction, the question

13  before the court is whether Nevada may, consistent with the Due Process Clause of the Fourteenth

14  Amendment, exercise personal jurisdiction over a nonresident Italian manufacturer in this products

15  liability suit for the death of Plaintiffs' decedent in Nevada, allegedly at the hands of the manufacturer's

16  defective machine.  Plaintiffs initially initiated this lawsuit in state court and actively litigated there

17  against other defendants for nearly a year-and-a-half before this case was removed by Automa, the only

18  remaining Defendant.  Plaintiffs' opposition to the motion to quash does not request jurisdictional

19  discovery to support their personal jurisdiction arguments.

20       Personal jurisdiction represents a restriction on judicial power which is based on principles of

21  individual liberty.  *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702

22  (1982).  The Ninth Circuit reviews a district court's determination regarding personal jurisdiction over

23  a defendant de novo.  *Pebble Beach Co.v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

24       There are two types of personal jurisdiction: general and specific.  When a state exercises

25  personal jurisdiction over a defendant in an action not arising out of, or related to, the defendant's

26  contact with the forum, the state is said to exercise "general jurisdiction" over the defendant.

27  *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 n.9 (1984).  A finding of general

28  jurisdiction allows a defendant to be haled into court in the forum state to defend any of its activities

1   anywhere in the world. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

2   Specific jurisdiction is more limited.

3       For the reasons explained below, the court finds that Automa's contacts with Nevada are

4   insufficient to support personal jurisdiction against it. The court will therefore recommend that the

5   Defendant's motion to quash be granted. This decision is prepared as a report of findings and

6   recommendations because the recommendation, if adopted by the district judge, is case-dispositive. A

7   federal court's determination that a state lacks personal jurisdiction over a defendant precludes the

8   parties from re-litigating the same personal jurisdiction questions in state court. *Ruhrgas*, 526 U.S. at

9   585.

10      **A.    General Personal Jurisdiction.**

11      Nevada's long-arm statute exercises personal jurisdiction over a party to a civil action on any

12  basis not inconsistent with the constitution of Nevada or the Constitution of the United States. NRS §

13  14.065(1). Nevada courts exercise personal jurisdiction over a nonresident defendant to the extent

14  permitted under the Due Process Clause of the United States Constitution. *Baker v. Dist. Ct.*, 116 Nev.,

15  527, 999 P.2d 1020, 1023 (2000). The Supremacy Clause of the United States Constitution precludes a

16  state from exercising personal jurisdiction over a defendant applying state due process law that conflicts

17  with the Due Process Clause of the Fourteenth Amendment. *Burger King Corp. v. Rudzewicz,* 471 U.S.

18  462, 470 n.12.

19      A state's exercise of general jurisdiction against a defendant allows state courts to resolve both

20  matters that originate within the state and those based on activities and events elsewhere. *Helicopteros*,

21  466 U.S. at 414 n.9. However, Defendants who live or operate primarily outside the state have a due

22  process right not to be subjected to judgment in its courts as a general matter. *McIntyre*, 131 S.Ct. at

23  2787. A state may exercise general jurisdiction over a defendant who is physically present within the

24  state at the time the suit is commenced through service of process, domiciled or incorporated within a

25  state, or has its principal place of business in the state. *Id*. In each of these circumstances "it is proper

26  to infer an intention to benefit from and thus, an intention to submit to, the laws of the forum State." *Id*.

27      Historically, a defendant's physical presence within the territorial jurisdiction of a state was a

28  prerequisite to the exercise of personal jurisdiction. *Pennoyer v. Neff*, 95 U.S. 714, 733 (1877). A

corporation is "present" in a state when it engages in activities within the state which courts will deem sufficient to satisfy due process. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Consistent with the Due Process Clause of the Fourteenth Amendment, a state may exercise general personal jurisdiction over a nonresident if the defendant has sufficient contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.* (Internal quotations and citations omitted).  This is known as the minimum contacts doctrine.  Under traditional minimum contacts analysis, a state may exercise general personal jurisdiction over a nonresident defendant whose activities in the state are "continuous and systematic." *Helicopteros*, 466 U.S. at 415.  The exercise of general personal jurisdiction over a defendant who has engaged in continuous and systematic contacts with the state is "reasonable and just", and does not offend traditional notions of due process. *Id.*

In this case, Plaintiffs do not seriously contend that Automa's contacts with Nevada are continuous and systematic.  Plaintiffs' opposition to the motion to quash relies on two emails sent by Automa personnel to Nevada to the decedent's employer before the accident, one letter sent by Automa to Indiana before the accident, and post-accident trips by Automa personnel to Nevada to inspect the allegedly defective machine.  During oral argument, counsel for Plaintiffs emphasized that Automa personnel inspected the machine and were needed to get it operating so that the cause of the accident could be determined.

The standard for establishing general jurisdiction is "fairly high" and requires a showing that the defendant's contacts are sufficient to approximate physical presence. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).  The Ninth Circuit considers such factors as whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated in the state. *Id.* Plaintiffs do not claim that Automa is registered or licensed to do business in Nevada, or that it maintains an office or other facilities in Nevada, holds a license, is incorporated in the state, or has designated an agent for service of process in the state.  Plaintiffs also do not claim that Automa directly advertises its products in Nevada.  Rather, Plaintiffs claim that Automa sent two emails to Nevada, a letter to Indiana before the accident, and visited Nevada after the accident.  These activities are

7

1    insufficient to support a finding that Automa has engaged in the type of systematic and continuous

2    contacts in Nevada that would make it reasonable and just to exercise general personal jurisdiction over

3    it.  Automa could not have expected to be haled into Nevada courts based on these limited contacts with

4    the state.  These activities are simply not the kind of contacts that approximate physical presence within

5    Nevada's borders that would render the exercise of general personal jurisdiction reasonable under the

6    Due Process Clause of the Fourteenth Amendment.

7            **B.    Specific Personal Jurisdiction.**

8            A state may exercise personal jurisdiction over a defendant even though its activities within the

9    state are not substantial or continuous and systematic.  Specific personal jurisdiction is a more limited

10   form of jurisdiction and applies to disputes that arise out of or are connected with a defendant's

11   activities within a state.  *Int'l Shoe*, 326 U.S. at 319.  The Ninth Circuit applies a three-part test to

12   determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate.

13   *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  Specific jurisdiction may be exercised if:

14         (1)  The nonresident defendant purposefully directs its activities or consummates
                some transaction within the forum, or with a resident of the forum; or performs
15              some act which purposefully avails itself of the privilege of conducting activities
                in the forum, thereby invoking the benefits and protections of the laws of the forum;

16         (2)  the claim arises out of or relates to the defendant's forum-related activities; and

17         (3)  the exercise of jurisdiction comports with fair play and substantial justice, *i.e.,* is
18              reasonable.

19   *Id*.

20           The plaintiff has the burden of establishing the first two prongs of this three-part test.  *Id*.  If a

21   plaintiff satisfies prongs one and two, the burden shifts to the defendant to establish a "compelling

22   case" that the exercise of jurisdiction would not be reasonable.  *Id*.  If the Plaintiff fails to establish the

23   first prong of the test "the jurisdictional inquiry ends and the case must be dismissed."  *Id*.  The first

24   prong of the test is commonly referred to by the phrase "purposeful availment."  *Id*.  This concept,

25   however, includes both purposeful availment and purposeful direction.  *Schwarzenegger v. Fred Martin*

26   *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Purposeful availment analysis is most often applied in

27   contract cases.  *Id*.  The analysis focuses on whether a defendant has purposefully availed itself of the

28   privilege of doing business in the forum by performing some type of affirmative conduct which allows

1    or promotes the transaction of business within the forum state.  *Sher v. Johnson*, 911 F.2d 1357, 1362
2    (9th Cir. 1990).

3    Purposeful direction analysis, however, is most often used in tort cases.  *Schwarzenegger*, 374
4    F.3d at 802; *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) (stating that "we apply
5    different purposeful availment tests to contract and tort cases").  A defendant avails itself of the
6    privilege of doing business in a forum state by engaging in activities such as executing or performing a
7    contract in the forum.  By engaging in such activities the defendant purposefully avails itself of the
8    privilege of doing business in the forum and enjoys the benefits and protection of the forum laws.  *Id*.
9    The quid pro quo for enjoying the benefits and protections of a forum law renders the defendant subject
10   to personal jurisdiction.  *Id*.  By contrast, purposeful direction analysis focuses on evidence of a
11   defendant's actions outside the forum that are directed toward the forum.  *Id*. at 803.  The Due Process
12   Clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a defendant
13   that purposefully directs its activities at residents of a forum, even in the absence of physical contact
14   with the forum.  *Burger King,* 471 U.S. at 476 (citing *Keeton*, 465 U.S. at 774-75 (1984)).

15   In *Calder v. Jones*, the Supreme Court granted certiori to determine whether California courts
16   could exercise personal jurisdiction over two Florida residents, a reporter and editor for the National
17   Enquirer.  Plaintiff Shirley Jones was a California resident who filed a California action against the
18   Florida residents for libel, invasion of privacy, and intentional infliction of emotional harm for an
19   article about her published in the National Enquirer.  About 600,000 copies of the article were sold in
20   California.  The Supreme Court held that the Due Process Clause of the Fourteenth Amendment
21   permitted California to assert personal jurisdiction over the defendants for the allegedly libelous story
22   published in the National Enquirer based on the "effects" of the defendant's Florida conduct in
23   California.  465 U.S. at 788-789.

24   The Supreme Court noted that the allegedly libelous story concerned the California activities of
25   a California resident and impugned her professionalism as an entertainer whose television career was
26   centered in California.  The article was drawn from California sources, and the "brunt of the harm"
27   plaintiff suffered (emotional distress and injury to her professional reputation) occurred in California.
28   *Id*.  The Supreme Court concluded that "California is the focal point both of the story and of the harm

1    suffered" and that California could therefore exercise personal jurisdiction over the defendants for the

2    "effects" of their Florida conduct in California. *Id*. The Court reasoned that the defendants knew that

3    the brunt of the injury would be felt by the plaintiff in the state where she lived and worked and in

4    which the National Enquirer had its largest circulation. *Id*. Under these circumstances, the defendants

5    could anticipate being haled into California courts to answer for the truth of the statements made in the

6    article, and the plaintiff was not required to go to Florida to seek redress "for persons who, though

7    remaining in Florida, knowing caused the injury in California." *Id*. at 790.

8         The Ninth Circuit has applied *Calder*'s holding and referred to it as the "effects test" or "express

9    aiming." *Bancroft & Masters*, 223 F.3d at 1087 (9th Cir. 2000). The Ninth Circuit recognized that

10   *Calder* could not "stand for the broad proposition that a foreign act with foreseeable effects in the

11   forum state always gives rise to specific jurisdiction." *Id*. Decisions prior to *Bancroft & Masters* had

12   required "something more" and the Ninth Circuit acknowledged that its decisions had not articulated

13   what that "something more" must be. *Id*. The *Bancroft & Masters* decision concluded that the

14   "something more" was the concept of "express aiming." *Id*. Applying *Calder*, the Ninth Circuit held

15   that for purposes of satisfying the purposeful availment/purposeful direction prong of specific

16   jurisdiction analysis under the effects test, the defendant must have (1) committed an intentional act,

17   which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered

18   and which the defendant knows is likely to be suffered in the forum state. *Id*. The express aiming

19   requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at

20   a Plaintiff whom the Defendant knows to be a resident of the forum state." *Id*. The concept

21   "encompasses wrongful conduct individually targeting a known forum resident." *Id*.

22         Applying these principles, the court finds that Plaintiffs have not met their burden of showing

23   the purposeful direction prong of the Ninth Circuit's three-prong test. Plaintiffs do not claim, and the

24   record does not support, a finding that Automa sold the machine at issue in this lawsuit with the

25   expectation it would be purchased in Nevada. The machine was sold to an Iowa company and there is

26   no evidence that Automa participated in any way in the sale of the machine to the decedent's employer,

27   Priority Plastics. Plaintiffs do not allege that Automa committed an intentional act, which was

28   expressly aimed at Nevada residents, which caused harm, the brunt of which was suffered in Nevada,

1    and which Automa knew harm was likely to be suffered by Nevada residents.  The Ninth Circuit has

2    required a showing of individualized targeting of the Plaintiffs to apply the effects test.  *Bancroft &*

3    *Masters*. *Id*. at 1088.

4          The complaint in this case asserts claims for strict products liability, negligence, breach of

5    express and implied warranties, oppression and malice express or implied; and alter ego liability.  The

6    SAC alleges that Mr. Carrion's employer ordered him to perform work on the blow molding machine

7    manufactured, designed, assembled, sold or otherwise distributed by Automa. SAC ¶¶12, 13.  Plaintiffs

8    allege that while Mr. Carrion was attempting to remove purged plastic from the machine, his head was

9    crushed and he was fatally injured as a proximate result of the unreasonably dangerous and/or defective

10   condition and resultant malfunction of the machine.  *Id*. ¶¶14, 15.  The strict product liability claim is

11   based on allegations Automa placed the machine into the stream of commerce and that the machine

12   and/or its component parts were unreasonably dangerous for their foreseeable use.  *Id*. ¶17.  More

13   specifically, the machine and its component parts were defectively designed and manufactured "with

14   respect to, *inter alia*, their ability to maintain their integrity to prevent" the machine from

15   malfunctioning and causing injury.  *Id*.

16          Counsel for Plaintiffs acknowledged in their brief, and in oral argument, that to establish

17   personal jurisdiction over an Italian company requires more than a showing that the manufacturer

18   placed its machine in the stream of commerce.  In *McIntyre*, the Supreme Court held that New Jersey

19   could not exercise personal jurisdiction over an English manufacturer of a metal shearing machine

20   which seriously injured a New Jersey worker.  The worker brought a products liability suit in state court

21   in New Jersey where the accident occurred.  The New Jersey State Supreme Court held that New Jersey

22   could exercise jurisdiction over the manufacturer consistent with the Due Process Clause of the

23   Fourteenth Amendment as long as the manufacturer knew or reasonably should have known that its

24   products were distributed through a nationwide distribution system that might lead to sales in any of the

25   states invoking the "stream of commerce doctrine."  The Supreme Court reversed holding that the

26   stream of commerce doctrine did not displace the general rule that a state may only exercise personal

27   jurisdiction over a defendant who purposefully avails itself of the privilege of conducting activities

28   within the forum, and thus invokes the benefits and protections of its laws.  131 S.Ct. at 2785.

1    The Supreme Court held that the principal inquiry in a products liability case "is whether the
2    defendant's activities manifest an intention to submit to the power of a sovereign." *Id*. at 2788.
3    Because the plaintiff had not established that the manufacturer engaged in conduct purposefully
4    directed at New Jersey, had no office in New Jersey, paid no taxes, did not advertise in or send
5    employees to the state, or have any contacts with the state apart from the fact the machine causing the
6    injury ended up there, the Supreme Court held New Jersey could not exercise personal jurisdiction over
7    the manufacturer.  The plaintiff showed that the manufacturer directed marketing and sales activities at
8    the United States and argued that three facts made New Jersey's exercise of jurisdiction constitutionally
9    reasonable.  First, plaintiff argued, the distributor agreed to sell the manufacturer's machines in the
10   United States; second, officials of the manufacturer attended trade shows in the United States, but not in
11   New Jersey; and third, up to four machines ended up in New Jersey.  *Id*. at 2786.  Additionally, the
12   manufacturer held both United States and European patents on its recycling technology, and its U.S.
13   distributor had structured its advertising and sales efforts under the manufacturer's direction and
14   guidance whenever possible.  *Id*.  The Supreme Court found that these facts "may reveal an intent to
15   serve the U.S. market" but did not show that the manufacturer "purposefully availed itself of the New
16   Jersey market."  *Id*. at 2790.  Placing the machine in the stream of commerce was not sufficient and
17   could not "supercede either the mandate of the Due Process Clause or the limits on jurisdictional
18   authority that Clause ensures."  *Id*. at 2791.  A defendant may be subject to the jurisdiction of the courts
19   of the United States, but not of any particular state.  *Id*. at 2789.  ("For jurisdiction, a litigant may have
20   the requisite relationship with the United States Government, but not with the government of any
21   individual state.")

22        In this case, Plaintiffs support their personal jurisdiction arguments with two emails that were
23   sent to the decedent's employer, Priority Plastics, in Las Vegas, Nevada, before the accident.  The first
24   is a December 29, 2008 email attached as Exhibit "1" from Automa's Service Department to plant
25   manager, Mike Fitzgerald.  Mr. Fitzgerald sent Automa an email indicating Priority Plastics was having
26   trouble getting the machine to power up and requested that Automa forward a recommended
27   preventative maintenance schedule for several machines described by model number and serial number.
28   Automa responded by email attaching the maintenance tables and maintenance manuals for the

1    machines.  Plaintiffs' opposition argues that Automa this shows had actual knowledge that its machines

2    were in Nevada, and that Automa purposefully directed specific acts toward Nevada.

3          Plaintiffs also rely on an October 27, 2009 email sent by Automa to three individuals at Priority

4    Plastics regarding Automa's North American service center attached as Exhibit "2" to the opposition.

5    The email consists of one line and attaches a "letter Presentation Priority.doc".  Plaintiffs acknowledge

6    that the attached letter was not addressed to Priority Plastics' Las Vegas facility.  However, Plaintiffs

7    claim that later in the same month Automa sent correspondence soliciting business to Priority Plastics'

8    Indiana headquarters.  This letter is attached as Exhibit "3" to Plaintiffs' opposition.  This October 2009

9    letter to Priority Plastics' Indiana headquarters solicits Priority Plastics to provide "parts, training,

10   maintenance, and consulting services to our customers in North America."  Because the prior emails

11   indicate Automa was aware that Priority Plastics had a Las Vegas facility, Plaintiffs argue the letter

12   shows "Automa purposefully held itself out to the benefits of the Nevada forum."

13         The Ninth Circuit has made it clear that to establish jurisdiction on purposeful

14   availment/purposeful direction under the effects or express aiming test, the Plaintiffs must show that

15   Automa engaged in wrongful conduct that targeted them as known Nevada residents.  It is not enough

16   that Automa might have predicted that its goods would end up in the State of Nevada, or had actual

17   knowledge that one of the machines was in Nevada.  Plaintiffs have not shown any nexus between the

18   two email communications, and one letter, and the death of Plaintiffs' decedent.  Plaintiffs attached an

19   excerpt from the OSHA investigative report and the expert reports of Mssrs. Koppenaal and Andrew to

20   their opposition.  The reports were attached to show that Automa representatives traveled to Nevada

21   after the accident on multiple dates to inspect the machine and help to get the machine working.  An

22   excerpt from OSHA report indicates that in an operational function test of the machine on December 14

23   through 15, 2010, six jumper wires were found that affected the safety features of the machine.  The

24   safety circuits were bypassed allowing the safety doors to open during operation which exposed

25   employees to moving parts of the machine.  Opposition (Dkt. #11) Exhibit "4".

26         A safety analysis of the accident conducted by Koppenaal also concluded that electrical jumpers

27   were used to bypass safety features on the front safety doors to allow the machine to operate when the

28   front doors were opened to allow for continuous production.  *Id*. Exhibit "5".  Koppenaal concluded

1   that the installation of the electrical jumpers that bypassed the de-energizing feature of the front safety

2   doors was responsible for the fatal injury to Mr. Carrion. *Id*.  Andrews also opined that operation of the

3   Automa machine with safety circuits disabled was an unsafe practice, which violated OSHA regulations

4   and was contrary to ANSI standards.

5          During oral argument, counsel for Plaintiffs argued, for the first time, that without the

6   maintenance manuals and schematics Automa attached and forwarded in the December 19, 2008 email,

7   Priority Plastics would not have been able to bypass the security circuits that exposed the deceased  to

8   the moving parts of the machine which killed him.  The SAC does not allege that the manufacturer

9   bypassed or disabled the safety features of the machine that OSHA and the two experts claim caused

10  this tragic accident.  As defense counsel correctly pointed out during oral argument, Plaintiffs' SAC

11  makes no allegation that Automa's supply of maintenance schedules and manuals caused or contributed

12  in any way to the decedent's accident.  During oral argument, Plaintiffs' counsel made it clear that

13  Plaintiffs believe the employer disabled the safety features incorporated into the machine by the

14  manufacturer.  Counsel for Plaintiffs argued at the hearing that Priority Plastics disabled the safety

15  features that shut the machine down when the safety door were opened because the machine frequently

16  jammed or needed maintenance.  Plaintiffs contend Priority Plastics disabled the safety features to

17  allow it to be worked on to maintain continuous production.  Doing so exposed employees, including

18  the decedent, to moving parts of the machine.  Mr. Carrion was killed while attempting to remove

19  purged plastic which jammed the machine.

20         Plaintiffs actively litigated this case in state court for about a year-and-a-half before it was

21  removed and conducted extensive discovery.  There is no evidence in the record that Automa was aware

22  that Priority Plastics had altered its machine by bypassing security measures, or that Priority Plastics

23  intended to use the manuals and tables provided for this purpose.  The email from the plant manager to

24  Automa requested the manuals because Priority Plastics was "having trouble getting the machine to

25  power up."  Additionally, the SAC makes no allegation that Automa's supply of maintenance schedules

26  and manuals caused or contributed in any way to the decedent's accident.  Rather, the SAC alleges that

27  the Automa machine and/or its component parts were unreasonably dangerous for their foreseeable use.

28  Moreover, even if Plaintiffs had some support for their arguments the manufacturer's manuals were

14

1   needed by the employer to bypass the safety features which caused the decedent to be exposed to

2   moving parts of the machine, which caused his tragic death, this would not alone be grounds to assert

3   personal jurisdiction over a foreign manufacturer.  As indicated, there is no evidence in the record that

4   Automa was aware that the manuals would be used for this impermissible purpose.  Supplying the

5   manuals to Priority Plastics is not wrongful conduct individually targeting known Nevada residents.

6        Under the second prong of the Ninth Circuit test for specific jurisdiction, the Plaintiffs must

7   show that the Defendant's contacts constitute purposeful availment which give rise to the current suit.

8   *Bancroft & Masters*, 223 F.3d at 1088.  The Ninth Circuit applies a "but for" causation test.  Plaintiffs

9   have not established that any of Automa's contacts with Priority Plastics in Nevada were the "but for"

10  cause of the decedent's injuries and death.  Finally, Plaintiffs cite no case for the proposition that a

11  manufacturer's post-incident conduct of sending representatives to inspect the machine and assist in

12  making it operational, or to learn of the cause of a tragic accident, establishes the purposeful availment

13  necessary for Nevada to exercise personal jurisdiction.  Finding personal jurisdiction for such post

14  incident investigations would dissuade responsible manufacturers from providing assistance and

15  expertise to discover the cause and avoid future accidents.  Automa's contacts with the State of Nevada

16  are simply too attenuated to allow the exercise of personal jurisdiction against it as a matter of due

17  process.

18  **II.   Sufficiency of Process.**

19       Automa also seeks to quash service of summons and complaint arguing Plaintiffs took 519 days

20  to serve it in violation of N.R.C.P. 4(i) which requires service within 120 days of filing of the

21  complaint.  The complaint was filed on June 27, 2012, and not served until November 28, 2013.

22  Although Plaintiffs applied for and received orders from the assigned state court judge to extend the

23  time for service, Automa argues that Plaintiffs did not show good cause for the extensions, and the state

24  judge did not find good cause existed before granting them.  Automa argues Plaintiffs had multiple

25  methods to serve Automa and were not sufficiently diligent in exercising the various methods to serve

26  Automa, and instead, opted to spend most of their time "figuring out how to avoid international

27  service."  Plaintiffs opposition outlines at length the efforts made to effect service of process.

28  / / /

1    The assigned state court judge granted ex parte applications and extended the time for Plaintiffs

2    to serve.  During oral argument counsel for Automa asked the court to rule on both bases for moving to

3    quash believing the non-prevailing party is likely to appeal the court's determination.  As the court has

4    determined Nevada lacks personal jurisdiction over Automa for the claims asserted in Plaintiffs'

5    lawsuit, the court need not decide whether the complaint and summons were timely served in

6    accordance with state law and judicial state orders extending the time for service.

7    **III.    Conclusion**.

8    In this case, a grieving family seeks redress for the tragic loss of a husband and father.  Nevada's

9    long-arm statute permits the exercise of personal jurisdiction over a foreign Defendant to the full extent

10   permitted by due process.  A tort victim may bring suit in any forum with which the Defendant has

11   minimum contacts such that the maintenance of a lawsuit does not offend traditional notions of fair play

12   and substantial justice.  *Keeton*, 465 U.S. 780-81.  Plaintiffs bear the burden of establishing personal

13   jurisdiction over the foreign Defendant in this case.  Plaintiffs did not request jurisdictional discovery

14   before decision of Automa's motion to quash because of the extensive discovery conducted before

15   removal.   Plaintiffs have had the opportunity to present any available evidence supporting their

16   jurisdictional arguments.

17   The standard for exercising general jurisdiction over a foreign defendant is "fairly high" and

18   requires contacts that approximate physical presence.  *Bancroft & Masters,* 223 F.3d at 1082.  Plaintiffs

19   do not seriously maintain that Automa has substantial or continuous and systematic contacts with

20   Nevada which would render it subject to general jurisdiction.  Rather, Plaintiffs argue that Automa has

21   sufficient contacts to show it purposefully availed itself of the benefits and privileges of Nevada laws

22   for purposes of maintaining this lawsuit.  For the reasons stated, the court finds that Automa's contacts

23   with the State of Nevada are simply too attenuated to allow Nevada to exercise personal jurisdiction

24   over it consistent with the Due Process Clause of the United States Constitution.

25   / / /

26   / / /

27   / / /

28   / / /

**IT IS THEREFORE RECOMMENDED** that Automa's Motion to Quash (Dkt. #4) be **GRANTED,** and Plaintiffs' Second Amended Complaint be **DISMISSED** for lack of personal jurisdiction over the foreign Defendant.

Dated this 17th day of April, 2014.

Peggy A. Leen
United States Magistrate Judge

17